UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DEREK HOUNSHEL,<br><br>    Plaintiff,<br><br>    v.<br><br>BATTELLE ENERGY ALLIANCE, LLC,<br><br>    Defendant. | Case No. 4:11-CV-00635-BLW<br><br>MEMORANDUM DECISION AND ORDER |

### INTRODUCTION

Before the Court are (1) Defendant Battelle Energy Alliance, LLC's Motion in Limine to Exclude Evidence of Damages (Dkt. 45); and (2) Plaintiff Derek Hounshel's Motion in Limine Regarding Impermissible Medical Examinations and Inquiries and Business Necessity and Direct Threat Defenses (Dkt. 56). In addition, after the deadline for filing motions in limine had passed, Hounshel filed two other motions in limine: (1) Motion in Limine Regarding Security Investigation Report and Workplace Violence

MEMORANDUM DECISION AND ORDER - 1

Pamphlet (Dkt. 69); and (2) Motion in Limine Regarding Fed.R.Civ.P. 30(b)(6) Deposition Testimony to Be Offered at Trial and Admission of 30(b)(6) Deponent( Dkt. 72).

For the reasons set forth below the Court will grant in part and deny in part (1) Battelle's motion in limine regarding damages; (2) Hounshel's motion in limine regarding affirmative defenses; and (3) Hounshel's motion in limine regarding Rule 30(b)(6) deposition testimony. The Court will reserve ruling on Hounshel's motion in limine to exclude the security investigation report and the workplace violence pamphlet.

## ANALYSIS

1. **Defendant's Motion in Limine**

    A. *Lost Earning Capacity*

    Battelle moves to exclude evidence of Hounshel's damages for "loss of earning capacity from injury to reputation." *Battelle's Opening Br.* at 1, Dkt. 45-1. Battelle does not dispute Hounshel's ability to claim emotional distress damages stemming from loss of reputation, but argues that Hounshel has failed to submit any evidence to support a claim for damage to his professional reputation in the form of lost earning capacity.

    Hounshel responds that his testimony about the nature and duration of his injuries is enough to justify presenting the issue of lost earning capacity to jury. At his deposition, Hounshel testified that he believed Battelle's actions would impair his future earning capacity:

    > Q. BY MS. ROSS: Are you claiming that Battelle somehow injured you in– or that you're suffering a loss of income going forward?

> A. I would say that it's very well likely that my reputation has been damaged, which may in the future affect employment, and by affecting employment, may affect income.
>
> Q. Okay. And what evidence would you offer to prove that?
>
> A. Well, there's a huge EAP file that I'm going to have to explain away at every security investigation now and forever onward.
>
> Q. Is that it?
>
> A. Well, that's a good start. There's going to be a – you know, this is something that's going to be a topic at every security investigation from this point forward, you know, and it's not like it's easy to explain away.

*Hounshel Dep.*, p. 45, Ex. A to Casperson Aff., Dkt. 62-2.

Hounshel's testimony that he believes having "to explain away" his EAP file "may" affect employment, which "may" affect income – is sheer speculation, and it is not enough to justify presenting the issue of lost earning capacity to the jury. Recovery for lost earning capacity "compensates an injured party for loss of economic value associated with one's vocation." *Chapple v. Ganger*, 851 F.Supp. 1481, 1493 (E.D.Wash. 1994). A plaintiff can only recover damages that he can prove with reasonable certainty. *Walden v. U.S.*, 31 F.Supp.2d 1230, 1235 (S.D.Cal. 1998) (citing *Peters v. Lines*, 275 F.2d 919, 930 (9th Cir. 1960). A claim for "impaired future earning capacity must be supported by concrete evidence" and "must be based on actual proof of the amount of impairment and not mere conjecture." *Id.* Hounshel's mere conjecture about how Battelle's actions may affect his ability to obtain a job that he may apply for in the future does not meet this standard.

If, however, Hounshel proffers competent, admissible evidence at trial to support his lost earning capacity claim, the Court would reconsider its decision. To illustrate, in *Williams v. Pharmacia, Inc.*, 137 F.3d 944 (7th Cir. 1998), the plaintiff offered an expert witness who testified that the poor evaluations the plaintiff received and his eventual termination tainted the plaintiff's employment record. The *Williams* court held that the jury was entitled to rely on this expert testimony in finding that the employer's acts of discrimination diminished the plaintiff's future earning capacity "in the same way that a physical injury may diminish the earning capacity of a manual laborer." *Id.* at 953. In other words, expert testimony about diminished earning capacity is enough to present the issue to the jury, but mere conjecture from the plaintiff is not.

Even if Hounshel has not disclosed an expert to testify on this issue of lost earning capacity, the Court is not foreclosing Hounshel from presenting other forms of competent evidence on this issue. Perhaps Hounshel could offer evidence to prove his claim of lost earning capacity that the Court has not yet identified. If Hounshel has such evidence, he may make a proffer at trial.

On the other hand, everyone agrees that Hounshel may testify about the emotional harm he allegedly suffered as a result of damage to his professional reputation. This could extend beyond the humiliation he may have suffered at the INL. For example, Hounshel could testify he suffers emotional harm based on the humiliation he will face if he ever applies for a job with the Department of Energy, or some other employer, and has to explain away his EAP file. The prospect of such embarrassment and humiliation is an

intangible nonpecuniary loss compensable under the ADA, and Hounshel is certainly competent to testify about the emotional distress he may suffer as a result of Battelle's alleged discrimination.

### B.   *Loss from the Sale of Home*

Hounshel alleges that he was forced to find employment outside of Idaho Falls because of Battelle's alleged discrimination.  As a result, Hounshel and his family relocated to North Carolina for his new job and had to sell their Idaho Falls home, which took approximately a year to sell.  Hounshel sold the home for approximately $119,000.  At the time he sold his home for $119,000, he owed nearly $160,000 on his mortgage.

Hounshel alleges that Battelle's actions forced him to relocate to North Carolina for his new job and sell his home in Idaho when the housing market conditions were very unfavorable.  Hounshel argues that had he not been constructively discharged, he would have remained in the home and would not suffered any loss based on what he owed on his mortgage. Hounshel intends to present evidence that this forced sale caused him to lose nearly $30,000 from the sale of his home.

The problem with Hounshel's argument is not whether he is entitled to be compensated for the loss suffered from the sale of his home. Indeed, the goal of Title VII and the ADA is to make the plaintiff whole, i.e., put the plaintiff in the same position he would have been in absent discrimination.  *See, e.g., Albemarle Paper Co. v. Moody*, 422 U.S. 405, 419-20 (1975).  If an employer's discrimination against an employee forces the employee to find new employment, relocation expenses incurred in order to obtain

comparable employment may reasonably be considered to have arisen from the discrimination. EEOC Enforcement Guidance: Compensatory and Punitive Damages Available under § 102 of the Civil Rights Act of 1991, 1992 WL 189089, *3-4 (July 14, 1992).  This rationale would ostensibly extend to include any loss that occurred because the employee was compelled to sell his home under unfavorable market conditions.

Assuming therefore Hounshel could recover a loss in equity from the sale of his home under the ADA and Title VII, Hounshel still has a problem of proof.  Hounshel maintains that he should be compensated for the difference between the loan amount and the sale price. But this assumes that this difference between the loan amount and the sale price accurately captures the actual loss incurred because of a forced sale.  It does not.

The loan amount reflects not the value of the home but rather the personal financial decisions the Hounshels made in the weeks, months and years before the sale. For example, if they had taken out a substantial second mortgage just prior to the sale of their home, the damage claim would be substantially more.  Or, if they had been more frugal and paid down their mortgage, the damage claim would be less.  Any decisions the Hounshels made about how to manage their finances are irrelevant to the question of the loss suffered as a result of the home being sold under difficult market conditions.

The Court sees two possible approaches Hounshel could have taken to calculate the loss he suffered from the sale of the home.  First, he could argue that, because he and his family never intended to leave Idaho Falls, the proper measure of damages would be the difference between the sale price and what the home would have been worth if

Hounshel had remained in Idaho Falls and retained the house.  This latter value would be represented by its current fair market value at the time of trial.  However, the problem with this approach is that Hounshel has not identified an expert witness to testify about the home's current value, and because the Hounshels no longer own the property, they cannot offer an opinion on its current value.

Alternatively, Hounshel could argue that he and his family, after waiting for nearly a year, were forced to sell for less than fair market value because they could no longer wait for a better offer.  Under this approach, the damages could be measured by the difference between the sale price and the fair market value of the home at the time of the sale.

In this regard, the Hounshel is correct that he does not need an expert to establish that fair market value, since the owner of property is deemed qualified to offer an opinion about the value of the property.  *U.S. v. 3969.59 Acres of Land*, 56 F. Supp. 831, 837 (D. Idaho 1944).  The Court, however, is not inclined to permit Hounshel or his wife to testify about the fair market value. Battelle asked Hounshel to state his damages in discovery and the basis for calculating those damages. Hounshel never alleged that he suffered damages because he had to sell the home quickly below the market value. And Hounshel did not designate his wife, himself, or any other witness as someone who would testify as to fair market value in his initial disclosures or his discovery responses. This deprived Battelle of the chance to test any opinion offered by the Hounshels as to

**MEMORANDUM DECISION AND ORDER - 7**

the home's fair market value by retaining its own expert to challenge that opinion. The Court, however, is willing to hear oral argument on this issue.

If the Court were to allow either Hounshel or his wife to testify about the fair market value of their home at the time they sold it, the Court would also be inclined to instruct the jury that an actual sale between a willing buyer and a willing seller is strong evidence of fair market value. *Morrissey v. Comm'r of Internal Revenue*, 243 F.3d 1145, 1147-48 (9th Cir. 2001).

**2.     Plaintiff's Motion in Limine re Affirmative Defenses**

Hounshel asks the Court to find, as a matter of law, that: (1) the examinations Battelle required Hounshel to undergo with Weinrich and Hargraves constituted "medical examinations" and disability-related inquiries under the ADA; (2) those examinations were not consistent with business necessity; and (3) Hounshel did not present a "direct threat." According to Hounshel, no legal determination regarding these issues has been made "although the facts are not in dispute." *Hounshel's Opening Br.*at 2, Dkt. 57.

Battelle concedes that Hargraves' evaluations of Hounshel constituted "medical examinations" under the ADA, and therefore Battelle says it "does not intend to offer any evidence at trial suggesting that such interactions were not medical examinations." *Battelle's Resp. Br.* at 7, Dkt. 63.  Given Battelle's concession in this regard, Hounshel's motion in limine to preclude Battelle from introducing evidence that Hargraves' psychological evaluation was not a medical examination is granted.

Battelle, however, disputes that Weinrich's "counseling sessions" with Hounshel constituted medical examinations or disability-related inquiries as defined by the ADA and has offered admissible evidence regarding this issue. Whether Weinrich's sessions with Hounshel were medical examinations or disability-related inquiries is a jury question.  Battelle is therefore entitled to present evidence to the jury regarding the nature and scope of Weinrich's sessions with Hounshel.   The Court may revisit this issue at the conclusion of trial.  If, at that point, the Court determines that no rational fact-finder could find that Weinrich's sessions with Hounshel were anything other than a medical examination or disability-related inquiry under the ADA, the Court may so instruct the jury.

Likewise, the Court declines to find, as a matter of law, that Battelle cannot assert a business necessity defense. This issue was extensively briefed at summary judgment, and Hounshel incorporates in his motion in limine many of the same arguments he made in support of his motion for summary judgment.  The Court issued a bench ruling denying Hounshel's motion for summary judgment and therefore found that questions of fact exist on Battelle's business necessity defense.  Therefore, Battelle will be allowed to present evidence in support of its business necessity defense.

The Court also finds that Battelle may present evidence to support the so-called "direct threat" defense.  A "direct threat" defense is essentially subsumed within the business necessity defense.  "An employer can defend against a disability discrimination claim under the ADA by relying on a qualification standard that 'is shown to be job-

related for the position in question and is consistent with business necessity.'" *Echazabal v. Chevron USA, Inc.*, 336 F.3d 1023, 1027 (9th Cir. 2003). "The term 'qualification standards' may include a requirement that an individual shall not pose a direct threat to the health or safety of other individuals in the workplace." 42 U.S.C. § 12113(b). Because the business necessity defense encompasses a "direct threat" defense, the Court finds that Battelle did not waive this defense.

Again, the Court may revisit these issues at the conclusion of evidence and before instructing the jury.

**3.     Plaintiff's Motion in Limine Re Security Investigation Report and Workplace Violence Pamphlet**

After the deadline for filing motions in limine had passed, Hounshel filed this motion in limine to exclude two exhibits identified by Battelle: (1) a Security Investigation Report created by Battelle security investigator Dee Wise; and (2) a Workplace Violence Pamphlet given to Hounshel by Dr. Dan Weinrich in Hounshel's first session with Weinrich in December 2011. Hounshel claims that the Security Investigation Report is irrelevant and contains hearsay. With respect to the Workplace Violence Pamphlet, Hounshel argues that the pamphlet also contains hearsay.

The Court appreciates being alerted to these issues prior to trial. However, the time for filing motions in limine has passed, and Battelle will not have the opportunity to file a response prior to trial. The Court cannot decide issues in a vacuum. The Court therefore will not issue a pretrial decision on this motion, but will invite Battelle to

submit a bench brief on the issue raised by Hounshel's motion so that the Court can consider both sides' arguments if the issue arises during trial.

### 4. Plaintiff's Motion in Limine re Rule 30(b)(6) Deposition Testimony

On November 12, 2012, Hounshel took the 30(b)(6) deposition of Battelle. Battelle's Rule 30(b)(6) designee was Toni Vandel , Battelle's employee concerns manager.  Hounshel seeks a ruling permitting him to present Vandel's 30(b)(6) deposition testimony at trial pursuant to Rule 32 of the Federal Rules of Civil Procedure. In addition, based upon Vandel's 30(b)(6) deposition testimony, Hounshel asks the Court to: (1) find that Battelle is bound by Vandel's deposition testimony that certain allegations Utterbeck made against Hounshel were unsubstantiated; (2) preclude Battelle from presenting any testimony suggesting Hounshel engaged in any of the actions alleged by Utterbeck; and (3) provide a jury instruction stating that Battelle is bound by Vandel's testimony that the Utterbeck allegations against Hounshel were unsubstantiated.

Hounshel filed this motion in limine after the deadline passed, but the Court feels that it can issue a ruling on these issues pre-trial and without a response from Battelle.

On the first issue, the Court will allow Hounshel to read into the record excerpts of Vandel's deposition testimony during Hounshel's case-in-chief pursuant to Rule 32(a)(3), which allows an adverse party to use the deposition of a Rule 30(b)(6) designee for *any* purpose.  The Court, however, will give Battelle the opportunity to object to the excerpts that Hounshel has identified.  In addition, Battelle may counter-designate portions of Vandel's deposition to be read into the record during Hounshel's case-in-chief, which "in

fairness ought to be considered at the same time." FRE 106.  The Court will rule on the objections and counter-designations prior to the deposition being read at trial.

The Court, however, declines to either preclude Battelle from presenting evidence suggesting that Hounshel engaged in any of the actions alleged by Utterbeck, or to expressly instruct the jury that Vandel's testimony regarding Utterbeck's allegations against Hounshel must be taken as true.

On the first issue, the Court agrees that Vandel, as Battelle's agent and Rule 30(b)(6) designee, speaks for Battelle.  But the Court cannot find that Battelle should be precluded from introducing evidence that might explain, or even contradict, Vandel's statements. Hounshel cites to no cases suggesting that a party cannot present testimony or other evidence that explains, or even contradicts, prior deposition testimony.  It might be poor trial strategy in some cases, but it is not forbidden.  Therefore, the Court will not preclude Battelle from presenting testimony suggesting Hounshel engaged in any of the actions alleged by Utterbeck.

Likewise, the Court declines to instruct the jury that "it must take Vandel's testimony as true and consider that none of the allegations Utterbeck made against Hounshel were substantiated."  As set forth in the Ninth Circuit Model Jury Instructions, it is entirely up to the jury "to decide which testimony to believe and which testimony not to believe." Ninth Circuit Model Jury Instruction 1.11.  To instruct the jury that they must accept Vandel's testimony as true would contradict this model instruction and undermine the very role the jury is intended to serve.

## ORDER

**IT IS ORDERED that:**

1. Defendant Battelle Energy Alliance, LLC's Motion in Limine to Exclude Evidence of Damages (Dkt. 45) is GRANTED in part and DENIED in part;

2. Plaintiff Derek Hounshel's Motion in Limine Regarding Impermissible Medical Examinations and Inquiries and Business Necessity and Direct Threat Defenses (Dkt. 56) is GRANTED in part and DENIED in part;  and

3. Plaintiff Derek Hounshel's Motion in Limine Regarding Fed.R.Civ.P. 30(b)(6) Deposition Testimony to Be Offered at Trial and Admission of 30(b)(6) Deponent ( Dkt. 72) is GRANTED in part and DENIED in part.

DATED: November 18, 2013

B. Lynn Winmill
Chief Judge
United States District Court