UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DEREK HOUNSHEL,<br><br>    Plaintiff,<br><br>    v.<br><br>BATTELLE ENERGY ALLIANCE, LLC,<br><br>    Defendant. | Case No.: 4:11-cv-00635-BLW<br><br>MEMORANDUM DECISION AND ORDER |

## INTRODUCTION

The Court has before it three motions. Battelle's Renewed Motion for Directed Verdict Regarding Punitive Damages (Dkt. 103), Plaintiff's Motion For Attorneys' Fees and Costs (Dkt. 113), and Defendant's Motion for Stay of Execution on Judgment (Dkt. 119). For the reasons explained below, the Court will grant Defendant's Renewed Motion for Directed Verdict Regarding Punitive Damages (Dkt. 103). The remaining motions will be addressed separately.

## BACKGROUND

Plaintiff Derek Hounshel filed this action against Battelle Energy Alliance LLC, alleging that Battelle engaged in unlawful adverse employment actions against him based on a perceived disability. Hounshel alleged that his perceived disability was either the

sole reason or a motivating factor for Battelle's decision to take these adverse actions against him.

Hounshel asserted that Battelle's adverse employment actions against him included: (1) giving him a negative performance evaluation, (2) placing him on a performance improvement plan, (3) requiring him to attend mandatory counseling, (4) subjecting him to a psychological assessment, (5) placing him on unpaid administrative leave, (6) suspending him, (7) moving his office, (8) restricting his building access, (9) restricting his access to coworkers, (10) denying him training and work opportunities, and (11) constructively discharging him.

At trial, the jury found in favor of Hounshel. The jury found that Battelle did take adverse actions against Hounshel and they were motivated, in part, by Hounshel's perceived disability. However, the jury found that Hounshel's perceived disability was not the sole reason for the adverse actions taken against him; they found that they were also motivated by lawful reasons.

In addition to compensatory damages, the jury also awarded punitive damages against Battelle in the amount of $10,000. Battelle argues that punitive damages are not appropriate in this case as a matter of law, and requests a directed verdict setting aside the jury's award of punitive damages.

# LEGAL STANDARD

The same legal standard applies to a renewed motion for a directed verdict as to the original motion. Under Rule 50(b), when a court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. Fed.R.Civ.P. 50(b). The party may then file a renewed motion for judgment as a matter of law and may include a request for a new trial. *Id.* The Court may resolve the issue in one of three ways: (1) allow judgment on the verdict if the jury returned a verdict; (2) order a new trial; or (3) direct the entry of judgment as a matter of law. *Id.* "Judgment as a matter of law is appropriate when the evidence presented at trial permits only one reasonable conclusion." *Torres v. City of Los Angeles,* 548 F.3d 1197, 1205 (9th Cir.2008) (internal citation omitted). Thus, "[a] motion for a judgment as a matter of law is properly granted only if no reasonable juror could find in the non-moving party's favor." *Id.* (Internal citation omitted). Evidence must be viewed in the light most favorable to the nonmoving party, with all reasonable inferences drawn in favor of that party. *Id.* at 1205–06. Judgment as a matter of law is not appropriate if conflicting inferences may be drawn from the facts. *LaLonde v. Cnty. of Riverside*, 204 F.3d 947, 959 (9th Cir. 2000).

Punitive damages, however, are only appropriate when "employer has engaged in intentional discrimination and has done so 'with malice or with reckless indifference to the federally protected rights of an aggrieved individual.'" *Kolstad v. Am. Dental Assn.*,

527 U.S. 526, 530 (1999) (quoting 42 U.S.C. § 1981a(a)(1)). A finding of intentional discrimination is not a sufficient condition for punitive damages, "[t]here will be circumstances where intentional discrimination does not give rise to punitive damages liability under this standard." *Id*. at 536. In some cases, "the employer may simply be unaware of the relevant federal prohibition." *Id*. at 536-7. Moreover, there will be other cases "in which the employer discriminates with the distinct belief that its discrimination is lawful." *Id*. at 537. Perhaps "[t]he underlying theory of discrimination may be novel or otherwise poorly recognized, or an employer may reasonably believe that its discrimination satisfies a bona fide occupational qualification defense or other statutory exception to liability." *Id.* Thus, the standard to prove that punitive damages are warranted is high; a plaintiff must put on evidence proving that an employer acted with malicious intent or with recklessness disregard for the plaintiff's rights.

## ANALYSIS

Battelle claims that Hounshel has put forth no evidence that it "acted maliciously, oppressively, or in reckless disregard of his rights," and thus has not met his burden of proving, by clear and convincing evidence, that punitive damages are appropriate. *Def. Br*. at 2, Dkt. 103-1. In support of its argument, Battelle asserts that its conduct towards Hounshel was simply a product of following standard company procedure. *Id*. Battelle claims that when concerns were raised by Hounshel's supervisors and coworkers, concerning his behavior issues, it followed its standard policies on workplace violence. *Id*. In Battelle's view, the complaints of Hounshel's co-workers were investigated

thoroughly and when they were found to be unsupported, they were dismissed; when they were found to be supported, Battelle took appropriate action. *Id*. at 2-3. Battelle also asserts that it gave Hounshel opportunities to respond to the concerns, and tried to find a position or work location that would meet Hounshel's needs. *Id*. at 3.

Additionally, Battelle notes that the nature of the complaints against Hounshel (intimidation and harassment,) warranted serious investigation. Given these realities, Battelle argues that it "was required to perform a delicate balancing act between Plaintiff's rights, the rights of his coworkers to an environment free of intimidation and harassment, and its own responsibility to provide a safe workplace." *Id*. In its response to these serious complaints, Battelle argues that it simply "followed its own policies and guidelines in a professional manner." *Id*.

Hounshel counters, in part, by listing a series of hypothetical factual determinations that the jury could have found that support an award of punitive damages. These include, among others, that: (1) the jury could have found that Utterbeck's allegations that Hounshel had mental issues was based on malicious and discriminatory intent, *Pl.'s Br*. at 2, (2) the jury could have found that Utterbeck's involvement in Hounshel's mandated counseling, as a result of the Performance Improvement Plan that Utterbeck put him on, was motivated by malicious intentions, *Id*. at 3, (3) [t]he jury could believe BEA's failure to maintain confidentiality regarding the medical examination constituted reckless indifference to Hounshel's federally protected rights," *Id*. at 4, and (4) the jury could believe "Dr. Weinrich lied about the consent form he alleged existed

for mandated evaluations, contrary to Hounshel's testimony regarding the consent form he signed that claimed he was there voluntarily." *Id*. at 4-5.

The above arguments are simply a series of hypothetical rationales (that cannot be proven or disproven) for why the jury awarded punitive damages. One could come up with an endless supply of facts that the jury "could have found" that support an award of punitive damages. However, the Court is constrained with what the jury *actually* found (as indicated on the verdict form) and what was established by the testimony at trial.

Here, although the jury found that the adverse actions taken against Hounshel were motivated, in part, by a perceived disability, they also found that Battelle had lawful reasons for taking these actions. The undisputed evidence was that there were complaints made by co-workers about Hounshel's behavior. Additionally, the nature of the complaints against Hounshel were serious – he was accused of intimidation and harassment. These are serious concerns to any employer. Employers have a strong interest in ensuring a safe and civil workplace. It is not unusual (nor is it malicious, oppressive, or in reckless disregard of an employee's rights) for an employer to thoroughly investigate allegations of this kind. Although the managers at Battelle may have been overzealous in investigating the complaints against Hounshel, and the jury's verdict on the underlying claim is fully supported by the evidence, the facts do not support the jury's finding that Battelle's actions were so severe as to warrant punitive damages. The Court concludes that from evidence at trial no reasonable jury could conclude by clear and convincing evidence that Battelle acted with malicious intent or

with recklessness disregard for Hounshel's rights. Therefore the Court will grant Defendant's Renewed Motion for Directed Verdict Regarding Punitive Damages.

## ORDER

**IT IS ORDERED:**

1. Defendant's Renewed Motion for Directed Verdict Regarding Punitive Damages (Dkt. 103) is **GRANTED**.

DATED: July 10, 2014

_____
B. Lynn Winmill
Chief Judge
United States District Court